# COURT OF ERRORS AND APPEALS,

## JUNE TERM,

## 1887.

———•———

DOE, demise of ANDREW B. COOPER, *v.* ROE, casual ejector, and
ELLIS P. MILLER, SIMEON BLOOD, JR., and JAMES BIGGS,
tenants in possession, and EZEKIEL W. COOPER, et. al., real
defendants.

*Will—Construction of.*

Words will be interpolated into a will in order to elucidate its meaning and to render
clear that which otherwise might be considered doubtful or uncertain; and in
order to carry out the apparent intent of the testator the will will be construed
as if said words had been inadvertently omitted.

The testator by his will created and established cross remainders among his several
children respectively and their children lawfully begotten; so that his children
and their children should inherit so long as any of them should survive with re-
mainder over to strangers in fee upon the issue of his own body becoming ex-
tinct. Held that a son of one of the children of the testator, his father being
dead, is entitled to an estate in possession of a proportional share of the lands
devised to one of the testator's sons who had since died intestate without issue.

One of the sons of the testator having died intestate and without issue, the sole sur-
viving son of the testator is not entitled to the whole of his estate in remainder
but the children of the other children of the testator are entitled to the same
share of said estate as their parents would have received had they been living,
as per stirpes.

(*June 27, 1887.*)

EJECTMENT. CASE STATED. Questions of law reserved by the
Superior Court of Kent County to be heard before the Court in
bank.

Richard Cooper, the testator, in the 2d, 3d, 4th, 5th and 6th Items of his will, devised to each of his five children, by name, certain portions of his real estate, in severalty, for life only, remainder to the children of each, in tail, in the parts so devised, in part as follows:

*Items 2.* I give and devise to my son Doctor Ezekiel Cooper * * * * * for and during his natural life, and not to be taken nor construed to be any longer, or greater estate. And from and after his decease, I give and devise all the foregoing lands and premises unto the several children respectively of my said son Ezekial, both males and females, if he shall leave any at the time of his death, which are lawfully begotten of his body, unto them his said children, and the heirs of their bodies respectively lawfully begotten forever.

*Item 3.* I give and devise to my daughter Sarah Buckmaster * * * * * for and during her natural life, and not to be taken nor construed to be any longer or greater estate * * * * * and from and after the death of my daughter Sarah, I give and devise all the above mentioned tracts or parcels of lands * * * * * to Richard Cooper Buckmaster, the son of my daughter Sarah, to him and the heirs of his body lawfully begotten forever * * * * * and from and after the death of my said daughter Sarah, I give and devise the lands and mills as above devised to my daughter Sarah for life, and also in case of default of lawful issue of my grandson Richard C. Buckmaster I give and devise the lands and premises as above devised to him in fee-tail together with the land and mills aforesaid, unto the several children respectively of my said daughter Sarah, both males and females, if she shall leave any at the time of her death, which are lawfully begotten of her body, unto them, her said children and the heirs of their bodies respectively lawfully begotten forever.

*Item 4.* I give and devise to my son Richard Jenifer Cooper * * * * * to him, the said Richard Jenifer Cooper, my son, for and during his natural life, and not to be taken nor construed to be any longer, or greater estate, and from and after his decease,

I give and devise all the foregoing lands and premises unto the several children respectively of my son Richard Jenifer, both males and females, if he should leave any at the time of his death which are lawfully begotten of his body, unto them, his said children, and the heirs of their bodies respectively lawfully begotten forever.

*Item 5.*  I give and devise to my son Ignatius Taylor Cooper * * * * * for and during his natural life, and not to be taken nor construed to be any larger, or greater estate, and from and after his decease I give and devise all the foregoing lands and premises unto the several children respectively of my son Ignatius, both males and females, if he should leave any at the time of his death, which are lawfully begotten of his body, unto them, his said children, and the heirs of their bodies, respectively lawfully begotten forever.

*Item 6.*  I give and devise to my son William Hughlett Cooper * * * * * for and during his natural life, and not to be taken nor construed to be any larger, or greater estate, and from and after his death I give and devise all the foregoing lands and premises unto the several children respectively of my son Wm. H. Cooper, both males and females, if he should leave any at the time of his death which are lawfully begotten of his body, unto them, his said children, and the heirs of their bodies respectively forever.—I give and bequeath to my son William H. Cooper a legacy of three hundred dollars, in order to make up the deficiency in the value of the real estate devised to him with that devised to my other children.   And then proceeded, in Item 7th :

"*Item 7th.*   Provided, nevertheless, in case any one or more of my said children should happen to die without leaving child or children, lawfully begotten of their bodies, that can take and hold my real estate, as my immediate devisees, agreeable to the true intent and meaning of this my will, then, in such case, I give and devise the lands and premises above devised to such child or children which may or shall happen to die as aforesaid, unto the survivor or survivors of my said children, during their natural life ; and after their

decease, I give and devise the lands and premises, as aforesaid, to the child or children, both males and females respectively, of such survivor or survivors, lawfully begotten of their bodies, forever, and of any of my children, which may be dead, leaving such child or children, such child or children claiming such part or share as the parent or parents of such child or children would have claimed, if living, to be equally divided between my surviving child or children as aforesaid, and the child or children, lawfully begotten, of any that may be dead, claiming the right of their parent or parents, as if living, share and share alike, as tenants in common, and not as joint tenants, and to the respective heirs, as aforesaid, forever."

" And it is further provided, and it is my will, and desire and intention, that if the whole of my children should die without leaving lawful child or children, or legal descendants of such child or children, so that the whole of the lawful issue of my own body should become extent, then, and in such case, I give and devise the remainder and remainders, reversion and reversions, of my whole estate, in the manner and form following," etc.

The testator then devises over; and after the above devises over, the testator declares as follows :

" *Item 8th.*   Be it known, that it is my express intention, in this my will, to create and establish cross-remainders, on and in the aforesaid estates, lands, and premises, among my several and respective children, and their children lawfully begotten, so that my children and their children, as aforesaid, shall inherit so long as any of them shall remain."

The testator then bequeaths certain personal estate specifically as follows :

" *Item.*   I give and bequeath to my five children aforesaid, Ezekiel, Sarah, Richard, Ignatius, and William, all my bank stock in the Farmers' Bank of Delaware ; that is to say, twenty shares to each and every one of them.   Also, my bank stock in the Bank of

Caroline, in Caroline County and State of Maryland, from and after the marriage or death of my wife Clarissa; that is to say, to each and every one of them, severally, the number of ten shares, together with all the proceeds, dividends and profits thereof. I also give and bequeath to each and every one of my aforesaid five children, severally and respectively, the sum of twelve hundred and fifty dollars as a legacy, on the following terms and conditions; that is to say: That each of them, for him and herself, severally, shall marry, and have child, or children, lawfully begotten, at the time of their death; but in case any one or more of my said children should die, leaving no child or children, or lawful descendants, at the time of their decease, that then and in such case the bank stock and legacy bequeathed, as aforesaid, to such child or children so dying as aforesaid, shall go over and be equally divided to and amongst the survivor or survivors of my said children."

Then follows the residuary clause:

"*Item.* I hereby give, devise, and bequeath all the rest and residue of my real and personal estate whatsoever, to be equally divided to and among my five children, Ezekiel, Sarah Richard, Ignatius, and William, share and share alike; or if any one or more of my said children should happen to die without leaving children of their own bodies lawfully begotten, then in such case the share or shares of such child or children deceased, together with the aforesaid legacies to such child or children deceased, shall go to the survivor or survivors of my said children; to be equally divided, share and share alike; and if all my said children should happen to die, without leaving, of their own bodies, as aforesaid, heirs, and in such case, I give and bequeath unto my beloved wife, Clarissa, five thousand dollars of the aforesaid residue," etc., etc., etc.

Then occurs the following clause, contained in a codicil, dated July 22d, 1816:

"I do also declare, that it is my intention and will, that the whole of my estate, both real and personal, shall go to and be divided to and amongst my children and the lawful issue of their re-

spective bodies, so long as any of them shall remain ; and that no other person, in remainder, shall take or inherit any part thereof, so long as any of my children or their lawful issue shall survive."

And the following, contained in Codicil No. 2, dated October 27th, 1817 :

" I give and bequeath to my five children, one hundred and two shares of stock in the Bank of Caroline, which I purchased since the making of my original will, to be divided in the following manner, viz : To Ezekiel, twenty shares ; to Sarah, twenty shares ; to Richard Jenifer, twenty-two shares ; to Ignatius Taylor Cooper, twenty shares ; to William Hughlett Cooper, twenty shares ; and also to each and every of them, severally, an additional cash legacy, over and above the cash legacy left to each of them in my original will, the sum of seven hundred and fifty dollars, each, to be paid to them in good bonds, subject nevertheless to the like limitations, re-strictions, conditions, as are mentioned in my original will, in case of either of my said children dying and leaving no children, rela-tive to bank stock and cash legacies, therein mentioned."

Richard Cooper, the testator, died in 1818, leaving to survive him his widow and five children, viz: Ezekiel, Sarah, Richard J., Ignatius T., and William H., named in his will.

Ezekiel Cooper, one of the children of the testator, died in 1828, leaving to survive him four children, viz : Richard A., Ezekiel, Henrietta and Andrew B. Since the death of Ezekiel, two of his children, viz : Henrietta and Ezekiel, died, without issue, and since their death Richard A., another child of Ezekiel, died in 1874, leaving to survive him one child, Mary L. Raymond.

Sarah, another child of the testator, who intermarried with Charles Buckmaster, died in 1830, leaving to survive her three children, viz ; Sarah Ann, Ezekiel and Charles. Since the death of the said Sarah, Charles, one of her children, has died, without issue ; Ezekiel, another of her children, has died leaving to survive him two children, viz : Sarah Ann and Charles.

Richard J., another child of the testator, died in 1835, leaving to survive him one child, William P. Cooper, who died in 1861, and left to survive him his widow, Sarah L. Cooper, and one child, viz : Annie P. Cooper.

William H. Cooper, another child of the testator, died in 1847 without issue.

Ignatius T. Cooper, another child of the testator, died in 1884, leaving to survive him five children, viz : Richard G., Ezekiel W., William H., Alexander B., and Ignatius T.

The question is whether Andrew B. Cooper, the real plaintiff, and son of Ezekiel, a child of the testator, who died in 1828, is entitled to any, and if any, what estate, in possession, in the lands and premises devised by the testator to his son, William H. Cooper, for life, who died in 1847 without issue; and this question depends upon the construction to be given to the 7th item of the testator's will, and in giving such construction the Court will be aided by the 8th Item of the will, where the testator declares it to be his intention to create cross-remainders, etc., and also by the clause in the codicil dated July 22d, 1816, where the testator declares substantially that the whole of his real estate shall go to his children, and the heirs of their respective bodies, so long as any of them shall remain; and that no other person, in remainder, shall take or inherit any part thereof so long as any of his children, or their lawful issue, shall survive.

*Edward Ridgely* and *Beniah Watson*, for the plaintiff.

1. The Courts, in construing wills, endeavor to ascertain the intention of the testator by a fair interpretation of the words used by him, and when such intention is ascertained, such a construction will be given to the will as will carry into effect his intention, unless it is repugnant to some well estabished principle of law.

*Cruise Digest*, 6 *Vol.*, 172 ; *Rickards v. Adams and wife*, 1 Harr., 439 ; *Sapsley v. Sapsley*, 9 Pa. St., 130 etc.; *Harris v. Barry*, 7 Bush, 113 etc.

2. A particular intent will be held subordinate to a plain, general intent of the testator, where both cannot be effectuated.

*Workman v. Cannon*, 5 Harr., 91.

3. In the construction of wills the Court will adopt that construction which will best harmonize with the general and obvious scheme of the will; support and give effect to all its provisions; prevent disinheritance of the lineal descendants, and produce equality of benefits among those standing in equal, natural relations to the testator. If the language of a will is capable of two constructions, one of which would operate to disinherit a lineal descendant of the testator, while the other would not produce that effect, the latter should be preferred; and an intention to disinherit a lineal descendant will never be imputed to a testator by implication.

*1 Redfield on Wills*, 422 to 439, *et seq.*; *Low, Executor, v. Harmony*, 72 N. Y., 408; *In re Brown's Estate*, 93 N. Y. (Sickles' Court of Appeals), 295; *Minol v. Taylor and others*, 129 Mass., 160, &c.

4. When the words in a will are fairly capable of two constructions, one of which would cause an intestacy upon a certain event, and the other would avoid an intestacy upon any contingency, the Courts will always favor such a construction as will prevent an intestacy under any contingency that might happen. (In the case now before the Court, if the Court should give a construction to this will by which the lands devised to William H. should, after the death of Ignatius, the last survivor, go entirely to his children, then, if Ignatius had died without issue, there would have been an intestacy.)

*Badger v. Gregory*, 8 L. R. Equity Cases, 77 and 85; *Hurry v. Morgan*, 3 L. R. Equity Cases, 152, 156, 157, 158; *Waite v. Littlewood*, 8 L. R. Chan. Appeal Cases, 70–73; *Hodge v. Foot*, 34 Beav., 349, &c.; *Richardson v. Manning*, South Carolina L. and Eq., Law, Vol. 13, Equity, Vol. 12, 458; 5 Harr., 405.

5. It is established that where it is clear on the face of a will that the testator has not accurately or completely expressed his

meaning by the words he has used, and it is also clear what are the words which he has omitted, those words may be supplied in order to effectuate the intention as collected from the context. The obscurity apparently existing in the language of the 7th Item of the will is cleared by inserting the conjunction "and" between the word "forever" and the word "of" in line 13 of the 7th Item, as printed in this brief. And it is perfectly manifest that the draughtsman, while penning this clause in the 7th Item, inadvertantly omitted to write the conjunction "and" between the words "forever" and "of."

*1 Jarman on Wills*, the 5th American from the 4th English Edition, 486, top paging; *2 Williams on Exec.*, 6th American Edition, 1164, and cases there cited; *Aulich v. Wallace*, 12 Ken., 535; *Redf. on Wills*, 454.

6. The declaration by the testator, in the 8th Item of his will, that it was his intention to create cross-remainders between his children and their children, &c., and the clause in the codicil above referred to, both require that the language in the 7th Item of the will should be so construed as to give the lands devised to William H. for life unto the children of those children of the testator who died before William H., equally, *per stirpes*, with the children of Ignatius, who survived William H. Any other construction would defeat cross-remainders between the stocks of the testator's children, and would be directly opposed to his express declaration in the 8th Item and in the clause of the codicil above referred to, and would cause an intestacy in case Ignatius had died without children.

*Badger v. Gregory*, 8 L. R. Equity Cases, 77 and 85; *Hurry v. Morgan*, 3 L. R. Equity Cases, 152, 156, &c.; *Hannaford et al. v. Hannaford et al.*, 7 L. R. Queen's Bench, 116, &c.; *Washb. on Real Property*, 235.

7. "A gift of real or personal estate to several persons for life, with several remainders to their children, and if any of them die without children, then to the survivors for life, and afterwards to their children. Here it is improbable that a testator should intend to make the interest of the children depend on the accident of whether their parent (whose interest ceases on death) dies first or

second; and if to this be added a gift over, in the event of all dying without children, the conclusion is irresistible that what the testator meant was that as long as there were descendants of any to take they should take the whole; and the only mode by which effect can be given to this intention is by holding that cross-re-mainders are created between the stocks, irrespective of the periods at which the parents die, by reading "survivors" as "others." The authorities from Lord Thurlow's time downwards are almost uniformly in favor of reading "survivors" as "others" in such a case."—Remarks of Vice Chancellor James in *Badger v. Gregory*, 8 L. R. Equity Cases, 84-85.

8. The fact that the ultimate gift over is to the survivor of the class makes no difference. To whomsoever it is given an intention is equally manifest to make a complete disposition of the property, and that all should go over in one mass; and if "survivor" be construed strictly, there would be an intestacy in case the last survivor died without issue.

*Wake v. Varah*, 2 L. R., Ch'y D., 357 ; *Hurry v. Morgan*, 3 L. R. Eq., 152; 2 *Jarm. on Wills*, 702.

9. Where there is a devise of real estate to several persons for life, with remainder to their children, severally, in tail, and if any of them die without children, then to the "survivor," or "survivors," for life, and afterwards to their children in tail, and an ultimate devise over in case they all die without issue, in all such cases the word "survivor," or "survivors," are given their broad and liberal meaning, and are construed surviving stock and applied to the whole line of descendants, and such construction applies equally to gifts of personal property limited in like manner. In other words, the so-called stirpital construction is adopted as the proper one. The ground for such construction is the ultimate gift over in case all the children should die without issue, for the testator's intention is manifest that the whole shall go over in mass, and not in fractions at different times. (In the present case there is an ultimate gift over to collateral kindred of the testator in the event of all his children dying without issue.)

2 *Jarm. on Wills*, 5th American from the 4th English, 690,

etc.; 2 *Williams on Exec.*, 1577; *Badger v. Gregory*, 8 L. R. Equity Cases, 77; *Hurry v. Morgan*, 3 L. R. Equity Cases, 152, 156, 157, 158; *Holland v. Allsop*, 29 Beav., 498; *Wake v. Varah*, 2 L. R., Ch. D., 348, etc.; *Waite v. Littlewood*, 8 L. R. Chancery Appeal Cases; 70, 73; in re Walker's Estate, *Church v. Tyacke*, 12 L. R. Chan., Division, 205, in 1879; *Cooper v. McDonald*, 16 L. R. Equity Cases, 258, 272; in re Tharp's Estate, 1 *De Gex., Jones & Smith*, R., 453, etc.; *Theobold on Will*, 2 Ed., 1881, 504; *Hawkins on Wills*, star paging 203 & notes; in re Palmer's Settlement Trusts, 19 L. R. Equity Cases, 320; in re Arnold's Trusts, 10 L. R. Equity Cases, 251, etc.; *Cross v. Malby*, 20 L. R., Equity Cases, 378, etc.; *Hodge v. Foot*, 34 Beav. 349, etc.; *Smith v. Osborn*, 6 H. L. C., 376, etc.; in re *Usticke Will*, 35 Beav., 338.

In this case there was no bequest over in the event of all dying without issue, but the Court said : "but those in which there is a gift over, if the whole class die without issue, are quite distinct, for there would be an intestacy, unless the words were construed 'other,' or ' others.' "

*In re Keip's Will*, 32 Beav., 122; *Lucena v. Lucena*, 7 L. R. Chancery Division, 255, 259, 268; *Wilmot v. Wilmot*, 8 Vesey, 10; *Cole v. Sewell*, 2 H. L. Ca., 186; *Doe, on demise of Watts, v. Wainright*, 5 T. R., 427; 2 *Jarm. on Wills*, 555, that cross-remainders may be limited of estates for life and estates in tail.

10. The object and design of the testator, as shown throughout his will, especially in the disposition of his real estate, is to provide equally for his children, and their children, giving to his children an estate for life, and to their children an estate in tail.   It is unreasonable and improbable that the testator's bounty was made to depend upon the accident of Ignatius being the only survivor of William H., and by reason of such accident that Ignatius' children, who were unborn at the time of the testator's death, and who were no nearer to the testator than his other grandchildren, should have a double share of his real estate.   It is evident, from the language of the will, that the testator meant " that wherever there was a failure of a particular *stirps*, the share of that *stirps* should accrue to the other *stirpes*, and go in the same manner as the original shares." There is a just disposition in the Courts in doubtful cases

to lean to that construction which makes a complete provision for all those children or descendants who were manifestly the objects of the testator's bounty.

*Badger v. Gregory,* 8 L. R., Chancery Appeal Cases, 70, 74, by Lord Selbourne overruling the Master of the Rolls.

11. It is submitted that, independent of adjudicated cases, a fair and reasonable interpretation of the words used by the testator in the 7th Item will entitle the plaintiff in this suit to an estate in possession in the lands devised to William H. for life, that is, to an equal moiety of an undivided fourth part of said lands, in tail general. The testator has in this Item provided for the very contingency which has happened, for he has said if *any one* or more of my said children should die, &c., then I give said lands to the "survivor," or "survivors," for life, evidently contemplating the death of one without issue, leaving only one of his children surviving; and it is unreasonable to conjecture that the testator, while penning the 7th Item, only contemplated the death of one of his children without issue, leaving two or more surviving, and afterwards the death of one of those survivors leaving children. Stripping the clause in question of some of its redundant expressions and preserving the words of the testator, it is suggested that this clause may be fairly read and interpreted as follows: Provided, nevertheless, in case any one or more of my said children, should happen to die without leaving child or children, lawfully begotten of their bodies, that can take and hold my real estate, as my immediate devisees, agreeable to the true intent and meaning of this my will, then, in such case, I give and devise the lands and premises, above devised to such child or children which may or shall happen to die, as aforesaid, unto the survivor or survivors of my said children during their natural life; and after their decease (that is the decease of the last survivor) I give and devise the lands and premises aforesaid unto the lawfully begotten child or children, both males and females, respectively, of such survivor or survivors forever, *and* of any of my children which may be dead (that is dead at the time of the death of the one so dying without issue), leaving such child or children, such child or children (that is the child or children of a predeceased child or children of the testator)

claiming such part or share as the parent or parents of such child or children would have claimed if living, to be equally divided between my surviving child or children, as aforesaid, (that is the children of the survivor or survivors) and the child or children, lawfully begotten, of any that may be dead (that is the children of any who may have died previous to the death of the one dying without issue), claiming the right of their parent or parents as if living, share and share alike, as tenants in common, and not as joint tenants, and to their respective heirs, as aforesaid, forever. It is evident that the words " my surviving child or children," in the clause, to be equally divided between my surviving child or children as aforesaid, mean the child or children of the survivor or survivors, for two reasons: First, he is providing for a division of the property after the death of all of his children. Secondly, the words at the conclusion of the sentence " to the respective heirs, as aforesaid, forever," show that he meant these words of limitation to apply to his grandchildren, and not to his own children, for he has uniformly given to his own children an estate for life only, and to his grandchildren an estate tail.

It is further respectfully submitted, that the construction contended for by the plaintiff in this case will best harmonize with the general and obvious scheme of the whole will; will support and give effect to all its provisions; will prevent an intestacy, which might have occurred by the death of the last survivor without children; will produce equality of benefits among those standing in equal natural relations to the testator, and will carry into effect the manifest intention of the testator.

12. If the construction contended for by the defendants be correct, and if the first child of the testator had died leaving issue, and afterwards three others had died without issue, and then the survivor had died leaving issue, the children of the last survivor would become entitled to four-fifths of the testator's whole real estate. Such an unfair and unjust discrimination in favor of the children of the last survivor as against the children of the child who died first cannot reasonably be imputed to the testator; and it is believed that such an intention so to discriminate unequally between descendants equally near to him cannot fairly be gathered

from the language used by him in his will and the codicils thereto.

13. No one can read the 7th Item in connection with the 8th Item, where the testator declares it to be his intention to create cross-remainders, and with the clause in the codicil above referred to, as a whole, and not see plainly and distinctly that it was the intention of the testator to keep the property together, and to divide the accruing share, which happened by the death of William H. without issue, after the death of the last survivor, between the issue of all the children of the testator, who had died either before or after William H., leaving issue, equally per *stirpes,* and that the gift of the original shares is the scheme which was to govern the devolution of the accruing share.

*Nathaniel B. Smithers* and *George V. Massey* for the defendants :

The testator's sons and daughter took estates for their respective lives in the parcels of real estate devised to them severally, with contingent remainders in their respective parts to their respective children and issue of such, lawfully begotten, who might be living at their respective deaths, by purchase, as tenants in common, if more than one, in tail general, such issue taking per stirpes ; with cross remainders in tail between such children and issue in such respective shares ; with cross remainders over in each of such respective parts originally devised or subsequently accrued, on failure of such child, children or descendants of any one son or daughter living at the time of his or her death, to the survivor or survivors of the testator's sons and daughter, for life ; with remainder in tail general to the child or children or descendants of each surviving son or daughter respectively in such accrued share, by purchase, as tenants in common, in like manner as in the original share given to such son or daughter respectively ; with cross remainders between such children, or descendants of such, in such accrued shares respectively in like manner as in the part originally devised ; with cross remainders in tail in such original and accrued parts respectively upon failure of descendants of any one child to the issue, lawfully begotten, of each of the other sons and daughter of the testator according to stocks, by purchase, as tenants in common,

such issue taking per stirpes; only modified as to the parcels originally devised for life to Sarah, by the gift in tail to Richard Cooper Buckmaster; and upon failure of all the descendants of the the testator, remainder to his devisees over as provided in the will.

1. The inconvenience or absurdity of a devise is no ground for varying the construction where the terms of it are unambiguous; nor is the fact that the testator did not foresee all the consequences any reason for so varying.

*2 Powell on Devises,* 4, Rule XI; *Bird v. Luckie,* 8 Hare, 306, [32 E. Ch. Rep., 301.]

2. Words are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense is manifest from the paper itself.

*2 Powell on Devises,* 4, Rule XIV; *Wigram on Wills,* Prop. 1; *Hicks v. Sallit,* 3 De Gex., MacN. and Gordon, 782; in re Parker, 15 Ch. Division L. R., 528; *Kean v. Roe,* 2 Harrington, 103.

3. Words occurring more than once in a will shall be presumed to be used always in the same sense unless a contrary intention appear by the context.

*2 Powell on Devises,* 5, Rule XVI.

Every word must have its due weight and legitimate construction, and no word shall be altered, eliminated or added without imperative necessity shown by something in the will.

### ANALYSIS OF ITEM 7.

The testator having given in severalty to each of his five children by name, an estate for life in the lands devised to him or her, with contingent remainder to the children of such child in tail general, adds Item 7, stating with a proviso:

" *In case one or more of my said children.*"

" *One or more* " provide for successive deaths—" *of my said*

*children.*" These words undoubtedly mean the five children *named* and are equivalent to a repetition of them individually.

" *Should happen.*"—simply import contingency.

" *To die without leaving child or children lawfully begotten of their bodies.*"

" *Without leaving child or children*"—at the time of his or her death—" *lawfully begotten.*" These words occur throughout the whole will and mean *legitimate issue,* not being intended as words of procreation giving an estate tail to the parent.

" *Of their bodies.*" Of their several bodies. This is an example of the use of the word " their," in a several sense of which another more important instance will soon occur.

" *That can take and hold my real estate as my immediate devisees.*" This fixes the contingency as contemplated to happen at the death of the first taker for life. By the words " *my immediate devisees,*" he indicates the descendants of the child, who were *first to take* by *purchase* as tenants in tail.

·" *Then, in such case.*" Simply words of contingency.

" I give and devise the lands and premises above devised to such child or children which may or shall happen to die as aforesaid."

This requires no comment. It is merely devising over the lands which he had first given for life, upon the happening of the contingency pointed out by the words " *as aforesaid.*"

" *Unto the survivor or survivors of my said children during their natural life.*"

" Unto the *survivor or survivors.*" Independently of the rule requiring the application of the ordinary sense of these words they must here receive literal construction, for they are expressly confined to it by the context, and mean *that one or more* of the testator's *children* living at the happening of the death of a child without leaving issue to take and hold as his immediate devisees.

" *Of my said children.*" By the word " *said* " the testator explicitly refers to his prior enumeration and thus, in effect, repeats their names and confines the term " *survivor or survivors* " to his " *said children,*" and by the words " *my said children,*" he further confined the term " *survivor or survivors* " to his own sons and daughter.

" *During their natural life.*" By the devise *for life* he still further and clearly fixes the meaning of " *survivor or survivors* " as restricted to those of his immediate children living at the happening of the contingency—because to *his children only* were such estates given. The descendants of his children always took *in tail.* Whoever was intended here as *a survivor* took only *for life,* and therefore a " *child* " of the testator is plainly indicated—otherwise he would have given to his *grandchildren* estates for *life,* which is aganist the whole scheme of the will.

" *And after their decease.*" That is, after the decease of the " *survivor or survivors,*" whomsoever he meant by those words being tenants for life.

" *Their.*" This word means the decease of his children being such survivor or survivors, *consecutively,* and not as importing survivorship among such children until the death of the last survivor, as will directly appear.

" *I give and devise the lands and premises as aforesaid.*" The only question here arises on the meaning of the words " *as aforesaid.*" He had given to *his children* life estates, and to *their* children estates tail, and in the devise just made to the " *survivor or survivors of his said children* " he had expressly restricted the interest to an estate for life, but now giving over to the grandchildren, on the death of such survivor leaving such children he gives " *as aforesaid* " meaning in tail as before given.

To me this is clearly its proper meaning here, but whether it be descriptive of the nature of the estate or of the corpus is immaterial to the question concerning the person taken.

" *To the child or children both males and females respectively of such survivor or survivors, lawfully begotten of their bodies forever of any of my children which may be dead leaving such child or children."*

This is a devise, to take effect upon the death of one or more of his children to whom as being then a survivor he had given an estate for life on the death without issue of the first taker for life. This is absolutely clear.

This devise over is explictly " to the child or children both males and females of *such survivor or survivors."*

This phrase as explicitly excludes every child from taking at that time who is not a child of a survivor.

The words "such *survivor or survivors"* definitely show the person or persons whose children were then to take and defines them to be the person or persons who as survivor or survivors took the estate for life upon the death without issue of the child of the testator who was originally first devisee for life.

" *Lawfully begotten of their bodies forever."* These words necessarily refer to the " *child or children*" of such survivor or survivors, and mean simply that any such child or children must be legitimate. By the word " *forever* " the testator meant so long as such issue shall continue, or to heirs in tail, using here the same expression with which he closes each of the original devises.

" *Of any of my children which may be dead leaving such child or children."*

This clearly relates back to the words " *survivor or survivors* " as the last antecedent and is in continuation of the gift to the child or children of such survivor or survivors of any one or more of testator's children as being such survivor and taking a share for life should afterwards die leaving child or children lawfully begotten.

" *Such child or children claiming such part or share as the parent or parents of such child or children would have claimed if living."*

"*Such child or children.*" What child? Clearly the child or children of a "*survivor,*" for only to such children was there any devise over. This is the devolution of the remainder in tail after the life estate of a parent was exhausted.

"*Claiming such part or share.*" What the parent would have held if living, the children were to take per stirpes. Now it is clear that no parent who did not come within the category of "*a survivor*" ever took anything as a remainder for life contingent upon the death of a child of the testator without leaving issue at his death.

"*To be equally divided between my surviving child or children as aforesaid and the child or children lawfully begotten of any that may be dead claiming the right of their parents as if living share and share alike as tenants in common and not as joint tenants and to the respective heirs as aforesaid forever.*"

This sentence is all important as it puts the meaning of the testator beyond controversy.

1. By the words "*equally divided*" it establishes a tenancy in common in *equal parts.*

2. That tenancy is common between a "*surviving child or children*" of the testator and the child or children of some one or more that may be then dead.

3. This tenancy in common arises upon the death of some one of the children of the testator who took a share in remainder for life in the lands devised to a child whose life estate had expired without issue who could take in tail as the immediate devisees of Richard Cooper.

4. Now it has been established that no child so took unless he or she *survived* the child or children so dying and was then living.

5. This tenancy in common must therefore take place between "surviving children" of the testator and the children of a dead "survivor," for not only do the words so import, but in no other

way can the shares be made equal without taking away from a living child of the testator a portion of that which he had. Thus:

Ezekiel died first, leaving issue; then Richard J. died, leaving issue. Now suppose William had then died without issue, leaving Sarah and Ignatius living. It is settled that Sarah and Ignatius would have taken William's lands in moieties for life. Then should Ignatius die, leaving issue, a tenancy in common is created in equal shares between Sarah and the issue of Ignatius, claiming per stirpes—the issue taking in tail, and Sarah holding for life as in her original share. But if upon the death of Ignatius the children of Ezekiel and Richard should be let into participation equally of the share of William, it would reduce Sarah's moiety to a fourth. This is absurd.

The words " my surviving child or children " are exact equivalents of " the survivor or survivors of my said children," and indicate precisely whom the testator meant.

"*As aforesaid*," occurring after the words " *my surviving child or children*," signify " *for life.*"

"*As aforesaid*," occurring after the word " *heirs*," signify " *in tail.*"

The following clause of the item providing that the whole of the lawful issue of the testator's body should become extinct before the remainders over should take effect, would have admitted the implication of cross remainders among the tenants in tail, but the testator did not choose to let it rest upon such *implication*, but by the next item declared such remainders expressly " on and in the aforesaid estates, lands and premises among my several and respective children and their children lawfully begotten, so that my children and their children, as aforesaid, shall inherit so long as any of them shall remain."

" *Among my several and respective children.*"

Now if there be anything clear in this will it is, that the

" several and respective children " of the testator took *estates for life*, and " their children " took estates tail. Among " children " of the testator therefore there could be cross remainders " *for life*," and among " their children " there could be cross remainders *in tail* passing from one to the other, but as between a child and a grand-child this was impossible, for in no event did the one take an estate of the same quality which was devised to the other.

" *So that.*" In such wise. This indicates the general inten-tion of the testator. The mode and order of limitation by which it shall be effected must be gathered from the other clauses of the will.

" *My children and their children, as aforesaid, shall inherit so long as any of them shall remain.*"

*My children—as aforesaid*=for life.

*Their children—as aforesaid*=in tail.

" *Inherit.*" This word, as applied to *the children of the testator*, is inappropriately used, inasmuch as they took for life only, but as it followed immediately after the words " *their children as afore-said*," describing persons who took inheritable estates, the mistake was one readily to have been made.

" *So long as any of them shall remain.*" This explicitly de-clared the intent to be that not until the entire extinction of the lineal descendants of the testator should any part of the lands pre-viously devised go over to any person not so descended, a purpose plainly manifest throughout the whole will, and specially further declared in the codicil dated July 22, 1816, but which added neither clearness nor force to an intention already apparent.

This construction gives effect to every word in the will—gives to each word its proper and ordinary meaning, and changing noth-ing—striking out nothing—transposing nothing, it fully carries out the declared intention of the testator.

*Doe, ex dem. Cooper, v. Townsend, et. al.*, 1 Houston, 365. Case stated.

This case cited in *Wylie v. Lockwood,* 86 New York *Rep.,* 292.

Accord. *In re Horner's Estate,* 19 *Chancery Division,* 186.

Examples of cross remainders between the issue of the same parent, followed by cross remainders between families :

*Sugden on Property, Mar.,* 283., 64 *Law Lib.,* 206.

*Wren, et. al., v. Clayton,* 6 *East.,* 629.   2 *Powell on Devises,* 333, [*623.*]

Estate devised to childred for life with contingent remainder in tail to their children with cross remainders in tail between them and if any of the children of the testator should die without issue to take the share given for life to the parent, such share to go among the surviving children for life with remainder in tail among the children of such surviving child or children in like manner as in the original.

*Cursham v. Newland,* 4 *Meeson & W.,* 100-340.

SAULSBURY, CHANCELLOR :

Richard Cooper, at that time a prominent citizen of Kent county, in this State, duly made and published his last will and testament on January 23, 1816, and died without having revoked the same in 1818.

He left to survive him a widow and five children, viz. : Ezekiel, Sarah, Richard J., Ignatius T., and William H.

To each of his five children he devised in severalty, portions of his real estate, in similar terms, which terms may be sufficiently understood by reference to the different items of his will in which the several devises are contained.

The sixth item is as follows : " I give and devise to my son, William Hughlett Cooper,  *  *  *  *  *  for and during his natural life, and not to be taken nor construed to be any longer or greater estate.   And from and after his death, I give and devise all the foregoing lands and premises unto the several children, respect-

ively of my son William H. Cooper, both males and females, if he should leave any at the time of his death which are lawfully begotten of his body, unto them, his said children, and the heirs of their bodies respectively forever, I give and bequeath to my son, William H. Cooper, a legacy of three hundred dollars in order to make up the deficiency in the value of the real estate devised to him with that devised to my other children.

Similar devises of his real estate for their natural lives, and not to be taken nor construed to be any larger, or greater estate were made to his other children respectively, and from, and after their deaths, respectively, were made unto their several children respectively, of the portions of real estate devised by the testator to his children respectively.

It is this item of the testator's will to which we are now to give a construction.

The seventh item of the will is as follows : "Provided, nevertheless, in case any one, or more of my said children shall happen to die without leaving child or children, lawfully begotten of their bodies that can take and hold my real estate, as my immediate devisees agreeable to the true intent and meaning of this my will, then in such case, I give and devise the lands and premises, above devised, to such child or children which may, or shall happen to die as aforesaid unto the survivor, or survivors, of my said children, during their natural life, and after their decease I give and devise the lands and premises aforesaid, to the child or children, both males and females respectively of such survivor, or survivors, lawfully begotten of their bodies forever of any of my children, which may be dead leaving such child, or children, such child, or children claiming such part, or share as the parent, or parents, of such child, or children would have claimed, if living to be equally divided between my surviving child, or children as aforesaid, and the child, or children lawfully begotten, of any that may be dead claiming the right of their parent, or parents as if living, share and share alike, as tenants in common, and not as joint tenants, and to the respective heirs, as aforesaid, forever ; and it is further provided, and it is my will, and desire, and intention, that if the whole of my children should die without leaving lawful child or children, or legal descendants of such child, or children, so that the whole of

the lawful issue of my own body should become extinct, then and in such case, I give and devise the remainder, and remainders, reversion and reversions of my whole estate in the manner and form following: (Here follow devises to divers persons in fee and in tail not being children or descendants of the testator.)

The eigthth item of the will is as follows: " Be it known that it is my express intention in this my will to create and establish cross remainders on and in the aforesaid estates, lands and premises among my several and respective children and their children lawfully begotten, so that my children and their children as aforesaid shall inherit so long as any of them shall remain."

In a codicil to his will dated July 27, 1816, the testator declared that it was his intention and will that the whole of his estate both real and personal should go to, and be divided to, and amongst his children, and the lawful issue of their respective bodies so long as any of them should remain. And that no other person in remainder should take or inherit any part thereof so long as any of his children or their lawful issue should survive.

Ezekiel Cooper one of the children of the testator died in 1828, leaving to survive him four children, one of whom is Andrew B., the plaintiff.

The testator's daughter Sarah, died in 1830, leaving to survive her three children, Richard I., another of children died in 1835 leaving to survive him one child. William H. Cooper, another child of the testator, died in 1847 without issue. Ignatius T. Cooper, another child of the testator, and the surviving one of the testator's children, died in 1884 leaving to survive him five children, viz: Richard G., Ezekiel W., William H., Alexander B. and Ignatius T.

The question for us to decide is whether Andrew B. Cooper, the plaintiff in the Action of Ejectment in the Superior Court in and for Kent County, in the State of Delaware, a son of Ezekiel Cooper, a child of the testator who died in 1828 is entitled to any and if any, what estate in possession devised by the testator to his son William H. Cooper, for life, who died in 1847 without issue.

In deciding this question it is necessary to consider every provision of the testator's will, having a relation thereto.

First, I remark that it is apparent from careful consideration of the proviso contained in the seventh item of the will, that to a

clear and full understanding of that proviso, that the word "And" should be read between the words "forever" and "of" in the thirteenth line of said proviso on the plaintiff's brief and in the twelfth line on the defendant's brief.

The Court in construing that proviso is justified and has authority to consider that that word was intended or meant by the testator so to be introduced, and was omitted from accident or inadvertence, and its insertion in a proper consideration of this provision of the testator's will whether absolutely necessary or not, would clearly elucidate his meaning and render clear that which otherwise might by others be considered doubtful or uncertain.

That it is perfectly competent for the Court to construe the will as though this word was inserted if they believed such an insertion would manifest more clearly the testator's intention is too clear to need authorities and will not I presume be seriously questioned by any one familiar with the rules of correct interpretation.

Properly to interpret the will of the testator, and to give full effect to all of its provisions, we must bear in mind that he has declared therein, that it is his intention that the whole of his the estate, both real and personal, shall go to, and be divided to, and amongst all his children and the lawful issue of their respective bodies, so long as any of them shall remain, and that no other person in remainder shall take or inherit any part thereof so long as any of his children or their lawful issue shall survive. He also declared as his expressed intention in his will to create and establish cross remainders in the aforesaid estates, lands and premises among his several and respective children, and their children, lawfully begotten, so that his children and their children shall inherit so long as any of them shall remain.

It was manifestly the intention of the testator to preserve his estate to his children, and to their children, and to the issue of their children to the exclusion of all others not of his family, as long as any member of his family should exist, and although there was a devise over to persons not members of his family, he expressly provided that those named in such ulterior devise should take nothing under the same until his entire descendants should become extinct.

Equality of benefit among his children and their children, and

the issue of his children is a marked characteristic of the testator's will.

To give effect to the testator's will in this respect it becomes necessary to ascertain the true meaning of the words "survivor" or "survivors" as used therein.

It must be observed, that the children of his children respectively, and the issue of such children were intended to be objects of the testator's bounty, and of equality in the enjoyment of that bounty is as plainly evidenced as is this intention in respect to his immediate children.

Now, can it be reasonably supposed that the equality of benefit in any portion of his estate to any of his children's children or their issue should depend upon the uncertain event of the parent of such children or issue being the last survivor of all the children of the testator?

Could the mere accident of survivorship, of any one of the children, of the testator destroy that equality of interest in all his grand-children and their issue, which the testator clearly indicates and expresses throughout his whole will to be his intention?

Is is possible that such an accident shall confer upon the children of Ignatius T. Cooper, one son of the testator, who in this case happened to be his surviving child, such absolute advantage of benefit, under his will, over the children of Ezekiel, Sarah and Richard; also standing in the same relation to the testator, and equally, objects of his bounty?

Did the testator intend any such superiority of advantage to the issue of Ignatius T. over the issue of his other children, simply because the former happened to survive in point of time the latter?

What then is the meaning of the word "survivor or survivors," as used by the testator in his will?

The following principles have been decided and considered in well adjudged cases.

If there be an *absolute* gift to several persons with the gift to the survivors, if any die without issue "survivors" must be construed in its ordinary sense.

The defendants claimed the benefit of this principle or rule, because they are the children of Ignatius T. Cooper who was the

33

surviving son of the testator, and contend that they, by reason of the survivorship of their father, became under the will of their grandfather, entitled to that portion of his real estate devised to William H. Cooper their uncle, who died without issue.

It must, however, be observed that the gifts or devises to the five children of Richard Cooper the testator were not in themselves *absolute*, and this fact when taken in connection with other portions of the testator's will, does not bring the contention of the defendants clearly within the principle above announced.

Another principle of interpretation is, that where there is a gift over to take place only in the event on which the property is limited to the first legatees, among whom there is to be survivorship, happened in respect to all these legatees, survivor will be construed " other " so as not to cause an intestacy.

Now in the present case as there was a devise over to persons not members of the testator's family, and as the testator declared in his will, that such persons should not take any portions of his estate so long as any of his descendants should remain, it would follow if the contention of the defendants be correct that had Ignatius T. died without children or issue, there must have been an intestacy as to that portion of the testator's real estate, devised to William, and this notwithstanding there might have been children or issue of Ezekiel, Sarah and Richard who were descendants of the testator at the time of the death of Ignatius without children or issue.

Another principle of interpretation is, that where there is a devise to sons, and the heirs of their bodies and if any die without issue to the survivors and the heirs of their bodies, and if all die without issue over, survivorship shall be referred to the *stirpes* and not to the first taker, and the share of a son dying without issue will go among the issue of a son previously deceased, and the surviving sons.

In such a case says Mr. Theobald, in his able and excellent treaties on wills, " the testator has expressed his intention of benefiting the line of issue, and the survivorship contemplated is one between the respective *stirpes*, and not between the first takers merely, and this coupled with the gift over which can only take ef-

fect if all the sons die without issue, is sufficient to enlarge the meaning of the word survivor."

The same principle will be applied to the case where the will gives life estates with limitations expressly to issue,followed by a gift on failure of issue of any of the tenants for life to the surviving tenants for life for their lives, and then to their issue, and an ultimate gift over on failure of issue of all the tenants for life. " There is here," says the same distinguished author, " the same evidence of intention to benefit the issue, and the gift over shows that survivership is contemplated not merely between the first takers but between the respective stirpes."

I have carefully examined the cases of *Hurley v. Morgan*, L. R., 3 Eq., 152 ; *Badger v. Gregory*, 8 Eq., 78 ; *Waite v. Littlewood*, 8 Ch., 70 ; *In Re Palmer's Trusts*, 19. Eq., 320., and many other adjudged cases, and find this last principle fully supported by well adjudged cases.

The consideration of the question as to when the words " survivor " or " survivors " shall be construed " other " or " others " may be confirmed by reference to the case *In re Keeps'* will, 32 Bevan., 122.

The master of rolls said in that case " that there was no question but that the rule of law as laid down by modern authorities that the word survivors is to be confined to the literal signification of survivors at the period spoken of by the testator, in every case where it is possible to do so, without violating the clear meaning of the rest of the will, and that the burden of proof lies on those who contend for a different construction to show from the words of the will taken together that the true meaning of the word as used by the testator is " others," and not " survivors."

This is a fair statement of the question of constuction.

The plaintiff in the action in the Superior Court by which the question to be decided has been reserved for our decision, must show that the true meaning of the words of the will of Richard Cooper, his grandfather, as used by the testator is " other " or " others " and not survivor or survivors in their restricted sense, and that applying the words strictly would be violating the clear meaning of the rest of the will, and that the clear meaning of the

rest of the will requires an enlarged meaning of the words "survivor" or "survivors."

The master of the rolls, however, *In re Keep's Will*, while adhering rigidly to the rule that the word "survivors" is to be construed strictly when it is possible to do so, was of opinion that the testator had plainly expressed his intention that the word survivors in the will he was considering meant the other nieces amongst whom he had divided the ten-elevenths of his residue, and made a declaration accordingly.

It may not be amiss to refer to the case of *Smith v. Osborn*, 6 House of Lord's Cases, 374, where it was decided that in a will the gift to two designated devisees as tenants in common in tail, and that if either should die without issue, then to the surviving devisee, that word must be taken to mean "other."

Opposed to this rendering of the words "survivor" or "survivors" as being "other" or "others," the counsel for the defendants refers us to the case of *Pomfort v. Graham*, 19 Ch. Div., 186.

In this case Hall, Vice Chancellor, said in the conclusion of his opinion : "I say now, looking at all the authorities and considering all the opinions expressed by the Judges, that when I have such a case as the present before me, I ought not to decide it upon the view that has been said by one Judge to be an absurdity, that the gift over to survivors for life with remainder to children is alone enough to construe "survivors" as "others."

I am of opinion that I ought to hold where that is the *sole circumstance to be relied upon*, the word must have given to it its natural and ordinary meaning, and that being so, hold that the words "survivor" or "survivors" must be so read in this case.

But is this an authority upon the question at issue? In the will before Vice Chancellor Hall, there was no gift over. There was no express provision as in the will of Richard Cooper, that it was the testator's intention to create cross remainders between his devisees and their issue.

Surely, a gift over to survivor for life with remainder to children, which seems to have been the sole circumstance for consideration by Vice Chancellor Hall, is not the sole circumstance, or any material circumstance to be considered in the construction of the will of Richard Cooper.

In the case of *Wylie v. Lockwood*, N. Y· Rep., 291, to which we have been referred there was no intention to create cross remainders by the testator, between his devisees, and no devise, over after the death of all his children without issue, or after all his descendants should become extinct as was the case in the will of Richard Cooper.

These are material differences which distinguish that case from the case before us.

But it is unnecessary to refer further to adjudged cases.

In my opinion, the intention expressed by Richard Cooper in his will to create and establish cross remainders on and in the estates, lands and premises among his several and respective children and their children lawfully begotten. So that his children, and their children should inherit so long as any of them should remain, and the expression of his will, and desire, and intention, that if the whole of his children should die, without leaving lawful child, or children, or legal descendants of such child, or children, so that the whole of the lawful issue of his own body should become extinct, and the gift, and devise of the remainder and remainders, reversion, and reversions, of his whole estate to divers persons in fee and in tail not being children, or descendants of the testator entitles the plaintiff in the Action of Ejectment as a son of Ezekiel Cooper, one of the children of the testator, to an estate in possession of one-eighth part of the lands devised to William H. Cooper another child of the testator, who died in 1847, without issue.

Houston, J.

In the interpretation of a last will and testament the duty of the court is to ascertain as far as it can do so to its own satisfaction, the true meaning and intention of the testator from the words in which he has expressed it, and to give effect to that meaning and intention if practicable. And the more uncertain and obscure the meaning of it may be, the greater is the danger of resorting to mere speculation or conjecture for a correct solution of its construction. But notwithstanding the multiplicity of words and the uncertainty of meaning which characterizes the seventh item of the will in question, I can safely say that it is clear to my mind from the whole context of it, that the testator intended in the first place

to devise to each of his five children, viz. : Ezekiel, Sarah, Richard J., Ignatius T. and William H., the several portions of his real estate mentioned respectively in the second, third, fourth, fifth and sixth items of it, in severalty for life, remainder to the lawful children of each of them in tail in the portion so devised ; "but in case any one or more of my said children should happen to die without leaving child or children lawfully begotten of their bodies that can take and hold my real estate, as my immediate devisees, agreeable to the intent and meaning of this my will, then in such case I give and devise the lands and premises above devised to such children which may or shall happen to die as aforesaid, unto the survivor or survivors of my said children during their natural life ; and after their decease I give and devise the lands and premises, as aforesaid, to the child and children, both males and females, respectively, of such survivor or survivors, lawfully begotten of their bodies forever, of any of my children which may be dead leaving such child or children, such child or children claiming such part or share as the parent or parents of such child or children would have claimed, if living, to be equally divided between my surviving child or children, as aforesaid, and the child or children lawfully begotten of any that may be dead claiming the right of their parent or parents as if living, share and share as tenants in common, and not as joint tenants, and to the respective heirs as aforesaid forever ; and it is further provided, and it is my will and desire and intention that if the whole of my children should die without leaving lawful child or children, or legal descendants of such child or children, so that the whole of the lawful issue of my own body should become extinct, then and in such case I give and devise the remainder and remainders, reversion and reversions of my whole estate in the manner and form following : "

The testator then devises over the estate to others, and then adds as follows in the eighth item of the will :

" Be it known that it is my express intention in this my will to create and establish cross-remainder on and in the aforesaid estates, lands and premises among my several and respective children and their children, lawfully begotten, so that my children and their children, as aforesaid, shall inherit so long as any of them shall remain."

And afterwards, on the 22d day of July, 1816 he executed and annexed a codicil to his will in which he subjoins the following declaration :

" I do also declare that it is my intention and will that the whole of my estate, both real and personal, shall go to and be divided to and amongst my children, and the lawful children of their respective bodies, so long as any of them shall remain ; and that no other person, in remainder, shall take or inherit any part thereof so long as any of my children or their lawful issue shall survive."

I have said that upon the whole will the first intention of the testator was clear to give the lands devised in the sixth item of it in severalty and in equal portions so far as pertained to the value of them, to his five children named for the life of each of them respectively, with remainder after the death of each of them to the lawfully begotten children. of each of them in fee tail general. And the next intention of the testator was equally clear, I think, that if any one or more of his said children and devisees for life under the first devise, should die with out leaving child or children, lawfully begotten of their bodies, then and in such case he gave and devised the lands and premises so devised to such child or children which should happen to die as aforesaid, unto the survivor or survivors of his said children during their natural life ; and this shows that none of his said children were to take even in that event by survivorship more than an estate for his life or their lives in any part of the lands and premises originally devised severally to his said children for life respectively with remainder to their children respectively in fee tail, and also that none of his grandchildren should take any interest or estate in possession in any portion of the lands and premises devised to any one of his children who should die without leaving any lawful child or children, during the lifetime of any one or more of his said children, but that the survivor or survivors of them should take such portion of the lands and premises so devised during their natural life. These intentions are all indicated · and expressed with sufficient clearness and certainty in the terms of the will to be readily apprehended and undertood.

But the question is as to the next intention, and what is the

meaning of the limitation and devise over which immediately fol-
lows this in the will ?    It is as follows :

"And after their decease, (that is to say, of the survivor or
survivors of my said children who are to take it during their na-
tural life,) I give and devise the lands and premises, as aforesaid, to
the child or children, both males and females, respectively, of such
survivor or survivors, lawfully begotten of their bodies, forever, of
any of my children which may be dead, leaving such child or
children, such child or children claiming such part or share as the
parent or parents of such child or children would have claimed, if
living, to be equally dividend between my surviving child or child-
ing, as aforesaid, and the child or children, lawfully begotten, of
any that may be dead, claiming the right of their parent or parents
as if living, share and share alike, as tenants in common, and not
as joint tenants, and to the respective heirs, as aforesaid, forever,

I must say that I have found it impossible to give any sensible
or reasonable interpretation to this devise in the will with the in-
herent errors apparent in the wording of it, one of which by the
omission of the word *and* either destroys the grammatical structure
of the sentence in which the omission occurs, or strips it of any
intelligible meaning whatever, while the other omission of a few
more words in another sentence of it, is so palpable as to make
nothing less than nonsense of it as it now stands in the will.    For
I agree with the learned counsel for the plaintiff that we cannot
give effect to, or in fact, any sense or meaning to the following
words of the will, "and after their decease, I give and devise the
land and premises, as aforesaid, to the child or children, both males
and females respectively, of such survivor or survivors, lawfully
begotten of their bodies forever, of any of my children which may
be dead, leaving such child or children claiming such part or share
as the parent or parents of such child or children would have
claimed if living," without inserting the conjunction *and* between
the word "forever" and the word "of" which immediately follows
it in the foregoing paragraph by reason of its omission, and which
with the word *and* there inserted would read, "and after their
decease, I give and devise the lands and premises as aforesaid, to
the child or children, both males and females respectively, of such
survivor or survivors, lawfully begotten of their bodies forever,

*and* of any of my children which may be dead leaving such child or children, such child or children claiming such part or share as the parent or parents of such child or children would claim if living," or in other words intending to declare in case of a survivorship for life of any one or more of the portions among his children by death of any one or more of them without leaving a child, then on the death of such survivor or survivors of his said children, the child or children of such survivor or survivors of his said children and the child or children of any of his children which may then be dead leaving lawful child or children, should take the portion or portions so held for life by such survivor or survivors of his said children *per stirpes*, and not *per capita*, and in fee tail general.

There is also, as I have before remarked, evidently a similar error by the omission of intended words in the concluding part of the first and greater part of the devise which we have just before repeated, and which immediately follows it, and is separated from the preceding part of it simply by a comma, " to be equally divided between my surviving child or children as aforesaid, and the child or children lawfully begotten of any that may then be dead, claiming the right of their parent or parents, as if living, share and share alike, as tenants in common, and not as joint tenants, and to the respective heirs as aforesaid forever."

This was evidently intended by the testator to be but one continuous devise over of any portion of the lands and premises which might happen to have been devised to any one or more of his said children who should happen to die without leaving child or children lawfully begotten of their bodies, and which in that case was or were given to the survivor or survivors of his said children during their natural life, after the decease of survivor or survivors of his said children, to such of his grand-children as he wished to share in such portions of his lands and premises as might thus survive to any survivor or survivors of his said children for life, after the death of such survivor or survivors, and when, of course, all of his said children would be deceased. This was the special contingency, in case it should occur, which he was evidently providing for in this devise of the will, for notwithstanding the length of it and the multitude of words employed in it, it is one single, continuous and contingent devise of that contingent estate devised to

the survivor or survivors of his said children for life in the portion or portions devised to any one or more of them who should happen to die without leaving child or children lawfully begotten of their bodies; it was to provide for the limitation and devise over of these contingent estates for life in the survivors of his said children in case they should occur as apprehended and provided for, on the death of the last survivor of them; and to show that it was evidently intended by the testator to be one such single and continuous devise of such a life estate or life estates on the death of all his said children, it is nowhere divided by any other mark of punctuation than a comma from the commencement to the conclusion of it. But to make this part of the devise consistent with all of the preceding part of it, and even possible in the contingency contemplated by the testator, must we not also insert before the words " my surviving child or children as aforesaid," and after the word " between " in the beginning of this part of the devise the words " the child or children of?"   And may we not suppose that in writing the will, or perhaps, in preparing a fair copy from the original draft of it, these words were inadvertantly omitted from it.   For as the words stand in the will " to be equally divided between my surviving child or children as aforesaid, and the child or children lawfully begotten of any that may be dead," &c., it was a matter of absolute impossibility apparent upon the face of the devise itself that there could be any of his said children surviving when this devise by the very terms of it was to take effect, for it was not until "after the decease of the survivor or survivors of his said children" that this devise over of the lands and premises to any of the children who should die without leaving a child or children, was to the survivor or survivors of them for life, and it was, of course, not until after the death of the last survivor of them, if there had been more than one survivor of them when his son, William H. Cooper, died without child or children, that any of the testator's grandchildren was to share in the possession of any part of the lands and premises devised in the first place to him.   It was therefore an impossible and absurd devise and wholly inconsistent with the manifest intention obvious upon the face of it, and must fail for that reason unless we give it a reasonable construction in accordance with that evident intention apparent upon the face of the devise,

and consistent with all the preceding and succeeding parts of the will, by inserting the words I have suggested in the place and connection where they were manifestly omitted contrary to the meaning and intention of the testator. With those words inserted the subsequent and concluding part of the devise in question will read as follows, and render the whole devise intelligible and consistent from the beginning to the end of it: " to be equally divided between the child or children of my surviving child or children as aforesaid, and the child or children lawfully begotten of any that may be dead, claiming the right of their parent or parents, as if living, share and share alike, as tenants in common, and not as joint tenants, and to the respective heirs as aforesaid forever." Without these presumptions to explain and rebut the obscurity and contradiction apparent on the face of devise itself as it stands, I have been wholly unable to say what meaning it possesses, or whether it in fact possesses any intelligible or practicable meaning whatever. And yet I have a strong conviction that the two corrections suggested, if made in the words of it, would make it what he intended it should be when he made the will.

His son Ignatius T. Cooper was the sole survivor of his said five children in the year 1847 when his son William H. Cooper died without issue, and this Court at the June Term, 1857, held that Ignatius T. Cooper, as such sole survivor, took under this devise on the death of his brother William H. without leaving child or children, an estate during his natural life in the portion of the lands and premises devised by the testator to his son William H., and which he held in pursuance of it, until his death in the year 1884, *Doe et Cooper v. Townsend et al.*, 1 Houst., 365. Ignatius T., was of course, the last survivor of the testator's said children, and on the death of William H. without leaving any child succeeded to the lands and premises devised to him, for the term of his life, as this Court unanimously ruled in that case ; and if there be any intention to be deduced with more certainty than any other from the obscure and defective language and grammar in which the devise now before the Court is expressed, it certainly seems to me to be more in accordance with the general scope and design of the other parts of the will about which there is no dispute, to give to this

devise the intention and construction which I have herein given to it.

As I have before observed, it clearly appears from the other parts of the will that it was the desire and intention of the testator in devising his real estate to his five children, was to divide it in value equally between them, giving to each an estate for life in his or her several portion, with remainder to the children of each in tail, with the special limitation or qualification, if any one or more of his said children should die without leaving a child or children, he gave the lands so devised to such child or children to the survivor or survivors of his said children during their natural life, and under which the land so devised to his son, William H, who was the only one of the five children who died without leaving any child, on his death passed to his son Ignatius T. for life, and who was then the only survivor of his said five children; but as this was the only exception which he made in his will to his scheme and purpose to devise and divide the lands equally between them all for life with remainder in tail to the children of each respectively, subject only to this special and limited impairment of the equality of the division among his children and their children after their death, during the life time of the survivor or survivors of his said children in case of the death of any one or more of them without leaving a child. And is there any thing in the will to warrant the opinion that he intended to depart any further than this from the equality of division which he first made between them and their children respectively in the main devise in the will, or that he intended in the event which has occurred that the lands and premises which were so devised to his son William H., should on his death without leaving a child, not only accrue by survivorship to Ignatious T., then his only surviving child, for the term of his natural life, but should also accrue on the death of the latter to the exclusive benefit of the children of the latter, if their should be any child or children or descendants of either of his other five children then living?

But that it was the intention of the testator that on the death of his last surviving child, Ignatius T., the lands which had survived to him for the term of his life on the death of his son William H. without leaving a child, should be equally divided between

all the children of his said children then living, *per stirpes*, share and share alike, as tenants in common, and not as joint tenants, and their respective heirs forever, is rendered still more certain and conclusive by the declaration made by him in the eighth item of it, as follows: " Be it known that it is my express intention in this my will to create and establish cross remainders on and in the aforesaid estates, lands and premises among my several and respective children, and their children lawfully begotten, so that my children and their children, as aforesaid, shall inherit so long as any of them shall remain." And such was the importance which he attached to the express intention therein declared that he was not content with so expressing it once only, but afterwards substantially repeats it in equally explicit and positive terms in the codicil executed on the 22d day of July, 1816, and appended to the will, as follows: "I do also declare that it is my intention and will that the whole of my estate, both real and personal, shall go to and be divided to and amongst my children and the lawful issue of their respective bodies, so long as any of them shall remain; and that no other person in remainder shall take or inherit any part thereof, so long as any of my children or their lawful issue shall survive."

One might even suppose that the eighth item of the will in which the testator so particularly and forcibly declares his express intention to create and establish in his will cross-remainders in the aforesaid estates, lands and premises among his several and respective children, and their children lawfully begotten, so that his children and their children should succeed to the title and possession of them under the devises of the will so long as any of them should be in existence, was directly suggested by the ruling of the Court of King's Bench in the case of *Doe v. Wainwright*, 5 T. R., 427, in a case of cross remainders somewhat similar to that in this case.