SECURITY TRUST COMPANY, formerly Security Trust and Safe Deposit Company, a corporation of the State of Delaware, Trustee under the last Will and Testament of EDWARD L. RICE, Deceased.

*vs.*

SUSAN P. BOYD, MARY B. EVANS, KATHERINE B. MOREHEAD, EDITH R. NAGLE, Administratrix of the Estate of Mary S. Barnett, deceased, WALLACE E. RYON, WILLIAM M. RYON, EDITH RYON NAGLE, JAMES P. RYON, FRANCIS J. NAGLE, Administrator of the Estate of Estella R. Ryon, Deceased, ELSIE L. RICE, also known as Elsie L. Patterson, and KATHERINE P. RICE.

*New Castle, June 23, 1943.*

*Charles F. Richards,* of the firm of Richards, Layton & Finger, for complainant.

*Henry W. Bryan,* of the office of Hering, Morris, James & Hitchens, and *Mario Ciullo* and *Chester C. Steadman,* both of Boston, Mass., for Wallace E. Ryon and William M. Ryon.

HARRINGTON, Chancellor: Edward L. Rice, by the Seventeenth item of his will, devised and bequeathed all the residue of his estate, in trust, for certain named persons; and by a codicil thereto he substituted the complainant for the trustee originally named to administer the trust. In that item, he first directed his trustee to divide the net income from the corpus of the trust among his wife and five children during their natural lives. It then provided:

"And upon and immediately after the death of any of my children leaving to survive a child or children living at the time of my death, then upon this further trust to pay over half-yearly the one sixth part of said net income during the lifetime of my wife and the one fifth part thereof after her death, to such child or children of said deceased child of mine, in equal shares during their natural lives; and if any of my children should die without leaving to survive any such child or children, then to pay over the share of said net income to which such child of mine was entitled during his or her lifetime, to my other children and their children during their respective lives, as hereinbefore provided as to the other portions of said income. And upon the death of any grand-child of mine who may have been living at my death, then upon this further trust to pay over, assign, transfer and convey, free from any trust, to such child or children as he or she shall leave to survive, and the issue of such child or children as may then be deceased, in equal shares, such a part of the said residue of any estate as shall be in the same proportion to the whole of said residue as the share of the net income to which such grandchild was or would have been entitled on the death of his or her parent, bore to the whole of said residue; the issue of a deceased child of any such grand-child to take only such part or share as its deceased parent would have taken if living. And if there be no issue surviving such grand-child, then upon this further trust, to hold such part of said residue as aforesaid, to or for my other children or grand-children or their issue, subject to the same trusts, powers, provisos, limitations, ends, intents and purposes as are herein devised and declared of and concerning the said residue of my estate:

"Provided, that if any of my children should be deceased at the time of my death, leaving issue, then I direct and empower the said

trustee to pay over to such issue, the same part or share of the net income or of the residue of my estate as such issue would have been ultimately entitled to receive, if his or their parent or parents had been living at the time of my death; and if any of my children should be deceased at the time of my death, without issue to survive, then the share of the child so deceased without issue to lapse for the benefit of my wife and living children, and the issue of any deceased child, and be held or disposed of by the said trustee according to the trusts hereby created:"

The testator, therefore, provided:

(1) That "upon * * * the death of any of my children leaving to survive a child or children living at the time of my death", and after the death of his wife, the one-fifth part of the net income from the trust should be paid "to such child or children of said deceased child of mine in equal shares during their natural lives; * * *."

(2) If any of his children "should die without leaving to survive any such child or children", his trustee was then "to pay over the share of said net income to which such child * * * was entitled during his or her lifetime, to my other children and their children during their respective lives, as hereinbefore provided as to the other portions of said income."

(3) "And upon the death of any grandchild of mine who may have been living at my death", then his trustee was directed "to pay over * * * free from any trust, to such child or children as he or she shall leave to survive, and the issue of such child or children as may then be deceased, in equal shares, such a part of the said residue of my estate as shall be in the same proportion to the whole of said residue as the share of the net income to which such grandchild was or would have been entitled on the death of his or her parent, bore to the whole of said residue; the issue of a deceased child of any such grandchild to take only such part or share as its deceased parent would have taken if living."

(4) "And if there be no issue surviving such grand-

child", the trustee was "to hold such part of said residue as aforesaid, to or for my other children or grandchildren or their issue, subject to the same trusts * * * as are herein devised and declared of and concerning the said residue of my estate: * * *".

Wallace E. Ryon and William M. Ryon, children of Wallace H. Ryon, deceased, and great grandchildren of the testator, claim that the whole scheme of the will indicates that children and on their death certain grandchildren, were to share in the income on a stirpital basis during their lives, and that an ultimate division of capital, free from any trusts, among great grandchildren was also intended on the same basis. They, therefore, claim that the primary shares in that fund of great. grandchildren, whose parent had died, would be increased from time to time by the subsequent death without issue of any of the brothers and sisters of that parent, as well as by the death, after the death of their father, of a child of the testator, without leaving issue. I am in accord with both of these contentions.

All of the testator's five children survived him, and primarily were entitled to the whole of the income from the trust fund in equal shares during their lives. On the death of any of them, their children, living at the death of the testator, were also to receive their parent's share of the income for life in equal shares. In case of the death of a child of the testator, without leaving any such child or children, "the share of the * * * net income to which such child was entitled * * *", was to be paid to the testator's "other children and their children during their respective lives * * *", but "as hereinbefore provided as to the other portions of said income". In that event, depending upon the facts, the income on that portion of the fund was, therefore, payable to the testator's children, and, in case of death, to their children, as above indicated.

Eventually, the great grandchildren of the testator were to take the capital free from any trusts; but the ques-

tion is how the distribution was to be made, and what are the shares of Wallace E. Ryon and William M. Ryon. The trustee claims that the only contemplated distribution of capital to a great grandchild was on the death of his or her parent, and has acted accordingly. If that construction of the will be correct, the descendants of some qualified grandchildren might ultimately receive much more than a stirpital share; but that does not seem to have been the testator's intent.

On the death of a grandchild living at the death of the testator, his surviving children and the issue of any that might be dead, were to be paid in equal shares, absolutely, such a part of the residue of the testator's estate "as the share of the net income to which such grandchild was or would have been entitled on the death of his or her parent, bore to the whole of said residue."

The primary shares of such great grandchildren in the capital of the trust were, therefore, measured by the proportionate part thereof on which their parent was receiving the income at his or her death; but other possible provisions for them were contemplated. The testator directed that if any such grandchild should die without leaving any issue, the trustee should hold "such part of the said residue as aforesaid to and for my other children or grandchildren or their issue subject to the same trusts as are herein * * * declared * * *."

The real meaning of this provision can only be ascertained by reading it with other and more specific provisions of the will dealing with the rights of children, grandchildren and their issue when grandchildren died leaving issue. The use of the words "subject to the same trusts" shows that such was the intent of the testator. Whether a grandchild died with or without children, the portion of the fund to be held or distributed by the trustee would be the same proportionate part on which he or she had been receiving the income for life. The phrase "such a part of said residue as aforesaid" could mean nothing else; and there is nothing to indi-

cate that a distribution to great grandchildren was intended only at the death of their parent. If a grandchild died without children, whether the fund on which he had been receiving the income, was to be held in whole or in part for children or grandchildren of the testator for their lives, or whether it was to be distributed in whole or in part to the children of any deceased grandchildren, depended upon the facts; but every reasonable inference is in favor of the conclusion that an ultimate stirpital division among the testator's great grandchildren was intended. In other words the context of the will indicates that the issue of a deceased grandchild are entitled to a proportionate distribution at the death of another grandchild, of the same stirpes, without issue; but other grandchildren of the same line would also receive the income for life, on their proper portion of that fund. No greater rights were intended to be given the testator's great grandchildren. At the death of a child of the testator without issue it seems equally clear that he intended the issue of deceased grandchildren to participate in the fund on which that child had been receiving the income during life.

Independent of other provisions already referred to, the testator provides that if any of his children should be dead, leaving issue at the time of his death, that the trustee should pay "to such issue the same part or.share of the net income or of the residue of my estate as such issue would have been ultimately entitled to receive if his or their parent or parents had been living at the time of my death."

He further provides:

"If any of my children should be deceased at the time of my death, without issue to survive, then the share of the child so deceased, without issue, to lapse for the benefit of my  *  *  *  living children and the issue of any deceased children and be held and disposed of by the said trustee according to the trusts hereby created."

Moreover, the fact that only specified grandchildren and their issue were beneficiaries is unimportant in deter-

mining whether a stirpital division among those selected was finally intended.

In view of these conclusions as to the testator's intent, no rules of construction, including the one applied in *Cooper v. Cooper, 7 Houst.* 488, 31 *A.* 1043; see 3 *Simes Law of Future Interests, Secs.* 741, 743, 744, need be considered.

After the death of Ann R. Warner, a daughter of the testator, on November 2nd, 1921, the complainant trustee paid one-fourth of the net income from the trust estate to Susan P. Boyd, a grandchild of Edward L. Rice, living at his death, and the only child of Katherine R. Patterson, who had died in 1905; one-fourth of said net income, in equal shares, to the five children of Mary S. Ryon, who had died in 1910, all of whom were, also, living at the death of the testator, or a one-twentieth part to each of them; one-fourth of the net income to Edward L. Rice, Jr. until his death, leaving children, in 1933; and the remaining one-fourth part thereof to Estelle M. Mendinhall, a daughter of the testator, until her death in 1934. This distribution of income was correct.

On the death of Wallace H. Ryon, one of the five children of Mary S. Ryon, deceased, on July 16th, 1929, the trustee paid a one-sixtieth part of the capital of the trust fund to each of his three children, Mary S. Barnett, Wallace E. Ryon and William M. Ryon. That distribution was likewise correct. But the same persons were entitled to additional stirpital distributions of capital on the subsequent deaths without issue, of their uncle, Edward A. Ryon, in 1929, of their father's aunt, Estelle M. Mendinhall, in 1934, and of their aunt, Estelle R. Ryon, in 1939. The amounts due on the death of Edward A. Ryon and on the subsequent death of Estelle R. Ryon were, however, not the same. All of this is a mere matter of calculation.

The twentieth item of the will of Edward L. Rice provides:

"I forgive to all my children and my sons-in-law any charges I may have against them on any books, except such as may be reduced to bonds and notes, and any indebtedness by bonds or notes of any of them shall be taken and held by the said trusts as a part of the principal of the share of the child or of the wife of the son-in-law so indebted, and shall be deducted from said share when the same is paid as hereinbefore provided:   except that the indebtedness of my son-in-law, Thomas L. Patterson to me shall not in any way be a charge against the interest of his wife in the trust estate.   And the said trustee shall not enforce the payment of such indebtedness of any of my children or sons-in-law, or require payment thereof, unless it shall be perfectly conveniently for those so indebted to make payment, no charge shall be made for interest accrued on such indebtedness at the time of my death; and thereafter interest shall be collected thereon at the rate of three (3) per centum per annum."

At the time of the testator's death, Edward L. Rice, Jr., owed him $14,143.25, evidenced by bonds and notes, $5,000 of which was secured by a mortgage.  Mary S. Ryon was also indebted to the testator in the sum of $1,500 which was evidenced by a bond and mortgage.  Pursuant to the directions of the testator's will, the trustee has made no attempt to collect these debts from the estates of Edward L. Rice, Jr., and Mary S. Ryon; nor has it foreclosed the mortgages executed by them.  The interest has been paid from time to time by the respective children of the debtors, but has been returned to them as income.

On the death of Wallace H. Ryon, one of the five children of Mary S. Ryon, one-fifth of her debt was cancelled by the trustee and deducted from the amount paid his children.

Edward L. Rice, Jr., died in 1933, and his children are entitled to his share of the income during their lives.  The time for the distribution of that part of the capital of the trust has not arrived; nor has the time arrived for the distribution of the whole of what may be termed the Mary S. Ryon "share" of the trust.  The plan followed by the trustee on the death of Wallace H. Ryon is perhaps in strict accord with the directions of the will; but in view of the

fact that the debts due from both Mary S. Ryon and Edward L. Rice, Jr., have become mere bookkeeping entries, there seems to be no good reason why they should not be charged against the principal of their respective shares of the trust fund. This would eliminate various bookkeeping entries and would tend to a more convenient administration of the trust estate without injury to anyone.

No other instructions were sought by the complainant.

A decree will be entered in accordance with this opinion.